UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN E. ROBINSON, JR.                              CIVIL ACTION

VERSUS                                             NO: 04-1899

DIAMOND OFFSHORE MANAGEMENT                        SECTION: "J" (1)
COMPANY, ET AL.

### ORDER AND REASONS

Before the Court is plaintiff's **Motion for Partial Summary Judgment** (Rec. Doc. 38) and defendants' **Motion to Strike** (Rec. Doc. 51). The motions are opposed. (Rec. Docs. 50 and 57). Having considered the record, the memoranda of counsel, and the applicable law, the Court finds that plaintiff's **Motion for Partial Summary Judgment** should be DENIED and defendants' **Motion to Strike** should be GRANTED in part and DENIED in part.

### BACKGROUND

In February of 2005, defendant ART Catering assigned plaintiff to a jackup rig owned and operated by defendant Diamond Offshore (USA), Inc. and/or one of its affiliates ("collectively

Diamond Offshore"). On February 23rd or 24th, Diamond Offshore began painting and repairing the room where plaintiff slept. Plaintiff testifies that during this time his bed looked like it was being used by the painters as a ladder or workbench.

Plaintiff testifies that on February 25 his bunk collapsed beneath him while he slept. As a result of the fall, he claims neck, back, and leg injuries. After the collapse an incident investigation by Diamond Offshore revealed that the bed was not welded or fastened to the rails. The investigation report recommended that all remaining bunks on the rig should be inspected and that rivets should be installed on all bunks. On July 2, 2004, plaintiff sued both Diamond Offshore and ART Catering claiming Jones Act negligence and vessel unseaworthiness. ART Catering sought summary judgment that plaintiff failed to provide evidence sufficient to support a negligence claim against ART. This Court denied ART Catering's Motion based upon plaintiff's minimal showing of negligence. Now, plaintiff is seeking summary judgment that Diamond Offshore's rig was unseaworthy.

## DISCUSSION

**A.   Legal Standard**

Summary judgment is appropriate where the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Little Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(citing Fed. R. Civ. Pro. 56(c)). The moving party bears the initial burden of demonstrating to the court that there is an absence of genuine factual issues. *Id.* If the moving party fails to meet that burden, summary judgment is inappropriate regardless of the response of the nonmoving party. *Id.* If the moving party meets its burden, the nonmoving party must designate specific facts that show there is a genuine issue for trial. *Id.* On summary judgment, factual controversies are resolved in favor of the nonmoving party. *Id.*

**B.   Analysis**

The plaintiff bears the burden of proving unseaworthiness at trial. *See Phillips v. Western Co. of North America*, 953 F.2d 923, 928 (5th Cir. 1992). The elements of an unseaworthiness claim are (1) that the defendant provided a vessel or equipment that was not reasonably fit for its intended purpose, and (2) that "the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury

3

was either a direct result or a reasonably probable consequence of the unseaworthiness." *Id.* There is no requirement that a plaintiff show negligence, but the "substantial" causation requirement is more stringent than the causation in a Jones Act negligence claim. *Id.*

    *1.   Plaintiff's Evidence*

To support his claim that the bunk was not reasonably fit for its intended purpose, plaintiff relies on his own testimony regarding the collapse, the "Illness or Injury Report" conducted by Diamond Offshore, and on the deposition testimony of Diamond Offshore's safety representative and offshore installation manager. Plaintiff testifies that the bed collapsed while he slept. The report indicates that the base under the mattress came apart from the rails on one side and fell eight to ten inches onto two survival suits beneath the bed. The report also indicates that the base is not welded, riveted, or screwed to the rail, and that there is no sign of metal fatigue or damage to the bed or rail. The report recommends that all the beds be inspected and that rivets be installed in the rails and bases to prevent separation. The testimony of the safety representative and offshore installation manager corroborates the information of the report and also indicate that, following the incident, the rails

4

were screwed to the bases on all the beds aboard the Ocean Drake.

 2.   *Subsequent Remedial Measures*

Diamond Offshore opposes the motion on two grounds. First, it argues that plaintiff relies on inadmissible evidence of subsequent remedial measures. Diamond Offshore has filed a Motion To Strike (Rec. Doc. 51) inadmissible evidence from plaintiff's exhibits in support of his Motion for Partial Summary Judgment. Diamond Offshore has asked that the Court consider its Motion to Strike in conjunction with plaintiff's Motion for Partial Summary Judgment. Plaintiff has argued in opposition to the Motion to Strike in its reply brief (Rec. Doc. 57). Therefore, having heard opposing arguments, the Court will rule on the Motion to Strike.

Federal Rule of Evidence 407 provides:

> **Subsequent Remedial Measures**
> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Diamond Offshore cites *Grenada Steel Industry, Inc. v. Alabama Oxygen Co.*, 695 F.2d 883, 887 (5th Cir. 1983) for the proposition that Fed. R. Evid. 407 applies to strict liability cases.

Although *Grenada Steel* decided the issue in relation to products liability, it did so based on the rationale behind the rule, that allowing remedial evidence discourages safety improvements and tends to misdirect attention toward irrelevant considerations. This rationale applies equally well to a claim that a vessel is unseaworthy. This Court agrees that Fed. R. Evid. 407 applies to the strict liability claim against Diamond Offshore.

The testimony that Diamond Offshore screwed down all the other bed rails subsequent to the incident is a textbook example of evidence inadmissible under Fed. R. Evid. 407. Plaintiff argues that the evidence of subsequent remedial measures is admissible to prove ownership, control, or feasibility. However, for the evidence to be admissible these issues must be "controverted." They are not controverted as yet. Diamond's memorandum seems to concede that it owns and operates the Ocean Drake. The deposition testimony of Diamond's employees indicates that there is no question but that screwing the rails was feasible prior to the incident. The only use plaintiff makes of the evidence is to show unseaworthiness. Evidence and argument that bed rails were screwed down after plaintiff's accident is inadmissible and will not be considered by the Court.

However, the "Injury or Illness Report" is admissible.

Although the Fifth Circuit has not yet decided this issue, other circuits that have considered it have found that investigative reports that recommend measures are not themselves remedial measures and are not excluded by Fed. R. Evid. 407. *See* AMJUR Evidence § 472 (citing *Dow Chemical Corp. v Weevil-Cide Co.*, 897 F.2d 481 (10th Cir. 1990); *Rocky Mountain Helicopters, Inc. v Bell Helicopters Textron, Div. of Textron, Inc.*, 805 F.2d 907 (10th Cir. 1986); *In Re Aircrash in Bali*, 871 F.2d 812 (9th Cir. 1989); *Fasanaro v Mooney Aircraft Corp.*, 687 F.Supp. 482 (N.D. Cal 1988)). The Court considers the reasoning of these cases persuasive and finds that the "Injury and Illness Report" is not a subsequent remedial measure.

   3.   *Diamond Offshore's Evidence*

Diamond Offshore next argues that there is sufficient evidence in the record indicating that the bed is reasonably fit for its intended use to raise a genuine issue of material fact. The Court agrees.

Diamond Offshore points to the testimony of its safety representative and its offshore installation manager that they were not aware of any incidents of other beds collapsing either before or since plaintiff's alleged accident and that the collapse could not be explained. It also relies on the "Illness

or Injury Report" description that the metal rails of bed were not damaged in any way. Diamond Offshore further relies on plaintiff's testimony that plaintiff had had no trouble with the bed or noticed anything out of the ordinary in the week before the incident when he had slept in it. Diamond argues that the bed was not designed to be screwed together. Diamond argues that this evidence supports the contention that the plaintiff's bed was reasonably fit for sleeping.

Diamond Offshore also points out that plaintiff testifies that he was the only person in the room when the bed collapsed and that he was asleep at the time. Diamond Offshore argues that plaintiff's unsubstantiated testimony that the bed spontaneously disassembled beneath him while he slept calls into question his credibility.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are inappropriate when ruling on a Rule 56 motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, the court cannot infer, as plaintiff requests, that because the bed was not fastened to the rails and it collapsed, it must not be reasonably fit for its intended purpose. Diamond Offshore has called that inference into question and the issue

must be decided at a trial. Diamond has also called into question plaintiff's version of the events. The resolution of the issue of the plaintiff's credibility must also await trial.

Because the Court finds that a genuine issue of material fact exists regarding the "reasonably fit" element of plaintiff's unseaworthiness claim, the Court does not reach the sufficiency of the "substantial causation" evidence.

Accordingly,

**IT IS ORDERED** that plaintiff's **Motion for Partial Summary Judgment** (Rec. Doc. 38) is **DENIED**;

**IT IS FURTHER ORDERED** that defendants' **Motion to Strike** (Rec. Do. 51) is **GRANTED** insofar as it seeks to strike evidence and argument of subsequent remedial measures, and **DENIED** insofar as it pertains to the "Injury or Illness Report".

New Orleans, Louisiana this the 26th day of January, 2006.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE